## The Commonwealth *versus* Reed *et al.*

34  275
139  93

Works of internal improvement erected by the state, for the benefit of the citizens at large, do not become a public nuisance, because they may render the neighbourhood unhealthy, by reason of the obstruction of running water, and the consequent overflowing of the adjacent lands; nor is their character changed, by a transfer into the hands of a private corporation, with a requirement that the works shall be kept up for the purposes of their creation.

ERROR to the Quarter Sessions of *Crawford county*.

This was an indictment against Charles M. Reed and others, the president and directors of the Erie Canal Company, for maintaining a public nuisance. The indictment was as follows:—

"State of Pennsylvania : County of Crawford: ss.

"The grand inquest inquiring in and for the county aforesaid, upon their oaths and affirmations respectfully do present: That there is a certain public highway and canal, leading from Erie, in the county of Erie, through the townships of East and West Fallowfield, in the county of Crawford, to the mouth of Beaver river, in Beaver county, commonly called the Erie Extension Canal, used by the citizens of the Commonwealth to navigate with boats, and transport their merchandise; which said canal is and was possessed by the Erie Canal Company, a corporation created by a law of this Commonwealth, and that on the 1st day of August 1858, at the townships of East Fallowfield and West Fallowfield, in the county of Crawford, and for a long space of time before that day, there was and had been a certain pond and reservoir, kept up and maintained by the said Erie Canal Company as a part of said canal, at the townships aforesaid, in the county of Crawford aforesaid, by the maintaining and keeping up dams, and damming the southern end of the Pymatuning swamp, at the townships and county aforesaid, whereby the waters of said swamp overflowed a large quantity of land therein situate, to wit, seven hundred acres; and the said pond and reservoir, then and there, and for a long space of time, had been, and still is, stagnant, putrid, and noxious, yielding unwholesome smells, corrupting the air, and causing and producing disease among the inhabitants residing there. And the jurors aforesaid do further present, that the said pond and reservoir is not necessary for the purposes of the said canal, and can and ought to be dispensed with by the said Erie Canal Company, as useless and injurious; and that Charles M. Reed is the president, and James C. Marshall, John Hearn, Andrew Scott, P. Metcalf, David McAllister, and John A. Tracy are the directors of the said Erie Canal Company, and to whom the care and management of the

[The Commonwealth *v.* Reed *et al.*]

said canal is committed by law; and that by reason of the pro-
mises, at the days and times aforesaid, at the townships and county
of Crawford aforesaid, it became and was the duty of the said
Charles M. Reed, James C. Marshall, John Hearn, Andrew Scott,
P. Metcalf, David McAllister, and John A. Tracy to keep up and
maintain the said canal in good order, repair, and wholesome con-
dition, and to remove and dispense with the said pond and reser-
voir, then and there being a common and public nuisance, as afore-
said. Yet the said Charles M. Reed, James C. Marshall, John
Hearn, Andrew Scott, P. Metcalf, David McAllister, and John A.
Tracy, well knowing the premises, on the said 1st day of August,
A. D. 1858, at the townships aforesaid, in the county of Crawford
aforesaid, and on divers days, and for a long space of time before
that day, did carelessly, negligently, unnecessarily, unlawfully,
and injuriously, keep and maintain the said dams, and suffer and
permit the said waters of said swamp to overflow and remain on a
large space of land, to wit, seven hundred acres, forming a large
pond and reservoir of water; by reason whereof the waters of said
swamp in the said pond and reservoir, on the days and times
aforesaid, at the townships and county of Crawford aforesaid, did
become stagnant, putrid, and noxious, from whence unwholesome
damps and smells did arise, whereby the air was greatly corrupted
and infected; to the great damage and common nuisance of the
citizens of the Commonwealth of Pennsylvania."

To this indictment, the defendants pleaded the following special
plea:—

"And the said Charles M. Reed, James C. Marshall, John
Hearn, Andrew Scott, P. Metcalf, David McAllister, and John
A. Tracy, in their own proper persons, come into court here, and
having heard the said indictment read, say that the said Common-
wealth ought not further to prosecute the said indictment against
them, Charles M. Reed, James C. Marshall, John Hearn, Andrew
Scott, P. Metcalf, David McAllister, and John A. Tracy, because
they say, that the pond and reservoir complained of in said indict-
ment, is a part of the internal improvements of this Common-
wealth, called the Erie Division of the Pennsylvania Canal, and
is and was constructed by said Commonwealth, in order that the
same be and remain a public highway, for the passage at all times
of all persons with horses, boats, and merchandise, on said Erie
Division of the Pennsylvania Canal; that the said dams and dam-
ming the southern end of the Pymatuning swamp, in the said
indictment mentioned, were created, constructed, and erected by
the authority and in pursuance of laws of the General Assembly
of this Commonwealth, by the officers, engineers, and agents
thereof, lawfully created, appointed, and employed therefor, for
the purpose of securing and furnishing sufficient water for the
supply of the said Erie Division of the Pennsylvania Canal; that

[The Commonwealth v. Reed et al.]

the said Charles M. Reed, James C. Marshall, John Hearn,· Andrew Scott, P. Metcalf, David McAllister, and John A. Tracy are in the possession of the said pond and reservoir and dam in said townships and county of Crawford, by authority and in pursuance of the Act of Assembly, entitled 'An Act to authorize· the governor to incorporate the Erie Canal Company,' as directors of said company, and not otherwise; and by the terms, conditions, and provisions of said act of incorporation they are required and commanded to keep up said dam and damming-pond and reservoir, for the purposes of said canal as aforesaid, in order that the said canal shall form, be, and remain a public highway, for the passage at all times, of all persons with horses, boats, and merchandise, and for the protection of the interest and property of the said Commonwealth, retained and reserved therein by the said Commonwealth under the terms and conditions of said act of incorporation; and further, that they have no right or power, under the laws of said Commonwealth, to renew the same, but only to keep the same in repair. And this, the said Charles M. Reed, James C. Marshall, John Hearn, Andrew Scott, P. Metcalf, David McAllister, and John A. Tracy, are ready to verify; wherefore they pray judgment, and that by the court here they may be dismissed and discharged from the said premises in the said indictment specified."

To this plea, the District Attorney demurred; and the court below, after argument, gave judgment for the defendants on the demurrer, and delivered the following opinion:—

" The indictment in this case sets forth the existence of a canal from Erie to the mouth of the Beaver river, under the control of the Erie Canal Company, a corporation created by the laws of the Commonwealth; and that on and for a long time previous to the 1st of August 1858, there was and had been a certain pond and reservoir kept and maintained by the said company as a part of the said canal, by means of dams and damming the southern end of Pymatuning swamp, whereby the waters of the swamp overflowed a large quantity of seven hundred acres of land, producing malaria, &c., and causing disease among the resident inhabitants in 'its vicinity; that the pond or reservoir is not necessary for the purposes of the canal, and ought to be dispensed with by the company, as useless and injurious; that the defendants are the directors of the said canal, to whom its care and management is committed, and that it became and was their duty, to keep up and maintain the same in good order, repair, and wholesome condition, and to remove and dispense with the said pond and reservoir then and there being a common and public nuisance; yet they, with knowledge of the premises, on the said 1st of August, and for a long space of time before, did carelessly, negligently, unlawfully,. and injuriously, keep up and maintain the said dams, and suffer

[The Commonwealth *v.* Reed *et al.*]

and permit the said waters of said swamp to overflow and remain on a large space of seven hundred acres of land, forming a large pond and reservoir, which became stagnant, putrid, &c., by which the air was greatly corrupted and infected, to the great damage and common nuisance of the citizens of the Commonwealth. To this a special plea has been put in, in which it is averred that the nuisance complained of is a part of the internal improvements of this Commonwealth, called the Erie Division of the Pennsylvania Canal, and is and was constructed by the Commonwealth in order that it be and remain a public highway, for the passage at all times, of all persons with boats, &c. ; that the dams, &c., complained of, were constructed by the authority and in pursuance of the laws of the General Assembly, by the officers, engineers, and agents thereof, lawfully created, appointed, and employed therefor, for the purpose of securing and furnishing sufficient water for the supply of the Erie Division of the Pennsylvania Canal ; and that the defendants are in possession of the said pond, reservoir, and dam by authority and in pursuance of an Act of Assembly, entitled 'An Act to authorize the governor to incorporate the Erie Canal Company,' as directors of said Company, and not otherwise ; and by the terms, conditions, and provisions of said act of incorporation, they were required and commanded to keep up said dams, &c., for the purpose of said canal, in order that it should form, be, and remain a public highway, for the purposes before mentioned, and for the protection and interest of the property of the Commonwealth retained and reserved therein, by her, under the terms and provisions of the act of incorporation :—and further, that they (defendants) have no right or power, under the laws of the Commonwealth, to remove the same, but only to keep them in repair ; and therefore pray judgment.

"A general demurrer has been put in to this plea, and thus a legal issue formed for the court's determination. The bill is fairly drawn, and we may suppose was intended to meet the broad question, whether the defendants are criminally answerable for consequences resulting from acts over which, in their creation and outset, they had no control or connection whatever, but have since then exercised an official supervision of them, for the objects and purposes designated in the act of incorporation. They are not charged with the erection of the dam that causes the flooding, but with the keeping of it up and the omission to remove it. The plea avers that the work was done by the officers of the Commonwealth, in pursuance of the various Acts of Assembly, which contemplate the internal improvements of the state, of which it formed a part. Allowing this to be so (and the demurrer admits it), one step in the line of argument is, to inquire whether those who constructed the work could be made criminally answerable for the poisoning effects which the stagnant waters would produce on the air, in

[The Commonwealth v. Reed et al.]

jeopardy of the health of the inhabitants in the neighbourhood? It will not be denied, that the right of eminent domain entitles the state to construct such works of internal improvement as may be thought expedient or desirable; and in their prosecution, private rights and interests must be made to yield to what, for the time being, may be considered the public weal. At the same time, sound policy, as well as constitutional provision, will always require that a due regard be paid to those private rights, so far as to make adequate compensation for them, when infringed upon. But what are these? The soil, with the improvements thereon, which, in the exercise of sovereign power, the state may take from the citizen, in furtherance of the object contemplated. Everything beyond that, whether it be of a prejudicial or beneficial character to the citizen, is a matter of consequence for which no compensation can be demanded as a matter of right. If the one affected truly can ask remuneration, then may the one benefited be required to make compensation for the advantage derived from it; and the argument, that the latter would be criminally answerable for an act of disobedience, would be as plausible, as that the state, or those who act officially for her, should be punishable for what might be termed inevitable consequences of certain legitimate acts. True, it is said, that the dams, &c., in the present instance, might and could have been dispensed with. Possibly they might; but who were the judges of this? Those to whom the engineering, planning, and construction of the work was intrusted; and if they were to be held criminally responsible for error in judgment, it might be seriously questioned, whether men of sufficient nerve could have been obtained, to carry out the scheme of enterprise and extend state improvements. If, then, the duly appointed officers of the state, in the discharge of their duties, to the best of their abilities, would not be answerable, even civilly, much less criminally, for what others might call errors of judgment or of skill, can the successors to the rights of the state, or their agents, be made criminal for the keeping up of the very works which their predecessors had constructed? It would be unreasonable to suppose that they could. We cannot gather from the pleadings, that the defendants have done any act producing the nuisance or injury complained of, but that they have kept up, so far as they could, this public highway, as it was given to the company by the Commonwealth, and which she has a right to resume, on the terms prescribed by the act donating this line of canal to its present owners. The Act of 1847, empowering the company to construct a berm-bank along the land in question is not compulsory, but permissive, and the not doing what is there allowed to be done, is a matter entirely discretionary; and it would be strange indeed, if the directors of the company could be brought into a criminal court for the mere exercise of that discretion. If they had taken the opposite course, and made the alteration con-

[The Commonwealth *v.* Reed *et al.*]

templated by that act, and the draining of the swamp or reservoir had caused an epidemic more fatal than that which is produced by the present structure, could they not be charged with a like character of criminality, as in the present instance? The change of construction would be but a matter of experiment, which might or might not remove the evil complained of. That it would abate it, no one can authoritatively affirm. The opinion of intelligent men that it would, might be found greatly at fault, after the experiment should be made; and if, in the mean time, we should punish the defendants for not making the experiment, or not doing what they cannot be compelled to do, and a change in the works result in no change for the better to the health of the inhabitants, we should be found meting out legal chastisement where none was merited. This Act of 1847 was a regulation of the manner in which the dam, &c., complained of, then existed; and whether the change contemplated by it was from considerations of health to the neighbourhood, or other adequate causes, we can only conjecture—more than likely, it was the former—and all we can say is, to express our deep regret that the remedy, if one it would have been, could not have been applied—for most certainly, the citizens in the section of country where the dams are, have suffered almost beyond comparison, while they have submitted to it with more than commendable patience—even to the spoiling of their goods, and, in many instances, of life itself. The passage, too, of this act would seem to imply imperfection in the original construction of the reservoir; but this would only be an opinion in opposition to the one which gave it its first existence, and if we were disposing of the case before a jury, the evidence would be but an array of opinion now, against what was the combined opinion of engineers, canal commissioners, superintendents, and other officials, when the works were first constructed; and whether a canal with a berm-bank would have been preferable to a reservoir and slackwater navigation. Whether the legislature could compel the company to make the change, is not necessary for us to determine; but if we are to take as law the decision of the Supreme Court in the case of The Borough of Meadville *v.* The Erie Canal Company, that it is not bound to construct bridges on the canal within the borough, and this, in the face of an Act of Assembly, it would follow, that it could not.

"But, supposing that the defendants could be convicted on the present record, to carry out the conviction to its legitimate extent, a part of the sentence would be, that the nuisance complained of should be abated; and this, the work which had its design, origin, progress, and completion under and by the supreme authority of the legislature of the Commonwealth, with full constitutional power to engage in the enterprise, be demolished, because its existence has poisoned the air—producing chill fevers and other diseases

[The Commonwealth v. Reed el al.]

among some of the good citizens who, like their brethren in other parts of the state, were participants and aiders in the construction. A result like this would be more prejudicial to private and public interests than the evil complained of, and we therefore overrule the demurrer, and allow the defendants to go without day, &c."

The Commonwealth, thereupon, removed the cause to this court, and here assigned the same for error.

*H. C. Johnson*, District Attorney, and *Farrelly*, for the Commonwealth, cited Bradley v. Boston and Maine Railroad, 2 *Am. Railway Cas.* 457, 461; Chestnut Hill and Spring House Turnpike Company v. Rutter, 4 *S. & R.* 18; Rhodes v. City of Cleveland, 10 *Ohio* 159; Lowell v. Boston and Lowell Railroad Corporation, 23 *Pick.* 24; Lehigh Bridge Company v. Lehigh Coal and Navigation Company, 4 *Rawle* 25; Commonwealth v. Pittsburgh and Connellsville Railroad Company, 12 *Harris* 159; Lancaster Turnpike Company v. Rogers, 2 *Barr* 114; Fisher v. Coyle, 3 *Watts* 408; Commonwealth v. Bowman, 3 *Barr* 202; Rung v. Shoneberger, 2 *Watts* 24.

*Finney & Douglass*, for the defendants in error, cited Act 7th March 1843, *Pamph. L.* 41; 11 *Wend.* 539.

The opinion of the court was delivered by

READ, J.—The President and Directors of the Erie Canal Company are indicted for a public nuisance, for keeping up and maintaining, by damming the southern end of the Pymatuning swamp, a certain pond and reservoir as a part of their canal, by means of which seven hundred acres of land are overflowed, and the waters in said pond and reservoir have become stagnant, putrid, and noxious, from whence unwholesome damps and smells arise, and the air is greatly corrupted and infected, to the great damage and nuisance of the citizens of the Commonwealth. There is also an allegation that the pond and reservoir are not necessary for the purposes of the canal, and ought to be dispensed with, as useless and injurious. To this indictment the defendants have pleaded specially, that the pond and reservoir are a part of the internal improvements of the Commonwealth, called the Erie Division of the Pennsylvania Canal, which was constructed by the Commonwealth for a public highway, and that the alleged nuisance was created, constructed, and erected by the authority and in pursuance of laws of the General Assembly of this Commonwealth, by the officers, engineers, and agents thereof, lawfully created, appointed, and employed therefor, for the purpose of securing and furnishing sufficient water for the supply of the said Erie Division of the Pennsylvania Canal, and that the said defendants are in possession of the said pond and reservoir, in pursuance

[The Commonwealth *v.* Reed *et al.*]

of the act authorizing the governor to incorporate the Erie Canal Company, as directors of said company; and by the terms of the act of incorporation they are obliged to keep up the alleged nuisance, for the purposes of the canal, in order that it may remain a public highway, and for the protection of the property reserved by the Commonwealth. To this plea there is a general demurrer.

This indictment, it will be perceived, is not against the corporation, but against its officers; but no difficulty has been made on this point by the defendants, and the question has been argued upon the broad ground whether, upon the facts declared in the pleadings, this is a public nuisance. The indictment shows that the works complained of were connected with the Erie Canal, and the plea shows that they were constructed by the Commonwealth, as a necessary part of the Erie Division of the Pennsylvania Canal; and are held by the Erie Canal Company, as the grantees of the state, and are to be kept up by them, in order that the canal may remain a public highway.

We should suppose that works of internal improvement, erected at the expense and by the officers of the state, for the benefit of the citizens at large, never could be regarded by the law as a nuisance; for the sovereign authority has expressly intended them to advance the prosperity of the community. If this be so, how is it possible, that their character should be entirely altered by being placed in the hands of a private company, with an express requirement that they should be kept up for the purposes of the canal, in order that it may be and remain a public highway? The Commonwealth and its agents could not have been indicted, and it seems clear, that the company and its officers occupy precisely the same position.

It would, indeed, be strange, that any legal proceeding could be instituted in a county through which a great public work passes, by which the whole purposes of the improvement might be destroyed, upon the singular allegation, that what has been constructed under the express authority of the legislature, is a great public nuisance.

It will be observed, that it is not alleged, that there is any damage to property (that, no doubt, has been paid for by the Commonwealth), but that it is injurious to the health of the inhabitants residing there. It appears by the indictment, that it was originally a swamp, but whether healthy or otherwise, is not stated.

Now the general charge would have applied equally well to any canal or slackwater navigation in the state, whether built by the state or private companies; to the whole line of the Pennsylvania Canal, whether on the Juniata, or the branches of the Susquehanna, or west of the mountains; or on the Delaware; to the Schuylkill navigation, and to a host of smaller works. Every dam under the Act of 1803, and every common mill-dam, would be open to

[The Commonwealth *v.* Reed *et al.*]

the attacks of the public prosecutor. The inevitable consequence of changing the course and current of rivers and streams by dams and obstructions, is to occasion a kind of malaria, in the first instance, which disappears generally in a few years. The same effect is produced in the outskirts of our cities, by the opening up of the fresh earth, in the progress of improvement, until the district is graded, paved, and properly drained.

Upon the principle of this indictment, the rice plantations of Georgia and Lombardy should be abated.

The judgment is affirmed.