## Commonwealth *v.* George, Appellant.

Argued March 22, 1955. Before RHODES, P. J., ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ. (HIRT, J., absent).

*Ralph M. Bashore,* with him *John L. Pipa, Jr.,* for appellant.

*Harold F. Bonno,* District Attorney, for appellee.

OPINION BY WRIGHT, J., July 21, 1955:

James George was tried in the Court of Oyer and Terminer of Northumberland County on bills of indictment Nos. 4 and 5 May Term 1952, charging respectively arson and burning to defraud an insurer.

After a verdict of guilty, motions in arrest of judgment and for a new trial were refused by the lower Court. Sentence was imposed and this appeal followed. It will be necessary to go into considerable detail in order to discuss the eight questions which appellant has raised.

The record discloses that on or about October 1, 1949, appellant and Frank Kaskie purchased from the Shamokin Baking Company a frame and concrete-block bakery and garage building, with stock, equipment and machinery. The building was located at the corner of Pearl and Pine Streets in the City of Shamokin, in a closely built-up residential area. The total consideration for the purchase was $23,500, of which $17,000 was paid for the real estate and $6,500 for the stock, equipment and machinery. Appellant's share in the investment was $7,000. At the time of the purchase the equipment was at least 15 years old, and no new equipment was added thereafter. A first mortgage of $8,000 was acquired from a local bank, and a second mortgage of $4,600 was held by the vendor. At the time of the purchase there was insurance on the building in the amount of $10,000, and on the personal property in the amount of $5,000. Kaskie conducted the business for appellant and himself from the date of purchase until May, 1951, when the business was discontinued and the building closed. Subsequently an attempt was made to sell the building, but the best offer received was only $12,000, which offer was refused. On August 1, 1951, appellant personally arranged and paid for additional insurance in the amount of $30,000 on the real estate, and $15,000 on the stock, equipment and machinery. At the time the additional insurance was purchased, the total amount due on the two mortgages was $9,650.

According to appellant's testimony, on the night of August 23, 1951, he visited his partner, Kaskie, at the latter's place of business in Shenandoah, to discuss the problems of the bakery business. He testified that Kaskie told him that someone was stealing things from the bakery and suggested that appellant go to Shamokin to see for himself. Kaskie further suggested that appellant visit the building early in the morning when no one was around. After leaving Kaskie, appellant went to Pottsville where he conducted a restaurant. After a brief rest, appellant relieved his bartender until the restaurant closed, about 2:00 a.m. in the morning of August 24. Appellant then drove to the bakery in Shamokin. Arriving there, he parked in the street a few feet from the main entrance. A light was burning in the bakery when he entered. He inspected the first floor and garage and then decided to go to the second floor. He had a flashlight with him which proved to be defective. He was unable to find the light switch and, while looking for the light in the dark, he bumped into a barrel containing flour, knocking it over. He then struck a match when there was, as he described it, a "boom", flames came into his face and something knocked him down. He screamed, ran to a back door (which was kept open in the summer time) and jumped to the ground. Although badly burned about the face and hands, and although his building was then on fire, he got in his car and drove the thirty miles back to Pottsville. Two women, awakened by the explosion, were standing on the porch across the street, about 13 feet away, and saw appellant leave the building.

After appellant arrived in Pottsville, about 4:30 a.m., he called a friend, Harry Thompson, and asked him to come to the restaurant. He told Thompson that he had been at the bakery and had struck a match

and that there had been a fire and he had been burned. Thompson took him to the hospital in Pottsville. Appellant then requested Thompson to tell anyone who inquired that he (appellant) had been burned in his restaurant by an explosion of a gas heater. He testified that he told this story because he feared that he might be put in jail. He subsequently told Dr. Ralph Lyons, who attended him in the hospital, two days after the fire, that he had been in his restaurant in Pottsville when an explosion occurred from which he had suffered the burns. A patient in the same room testified he heard appellant tell a nurse that he was burned in the cellar of his restaurant when he attempted to light a water heater.

Two State Police officers visited appellant in the hospital on September 8, 1951. After advising him as to their identity and that they had a warrant for his arrest, they took him from the hospital to the Pennsylvania State Police Substation at Shamokin, arriving there about 1:30 p.m. Prior to this time appellant had already consulted an attorney and had a slip of paper containing his attorney's name and telephone number. He gave this to one of the officers in the hospital and asked that his attorney be called. One of the officers testified that he told a nurse to get in touch with the attorney, and the evidence indicates that this may have been done. In any event, appellant's attorney did not appear. There was no conversation between the officers and appellant during the trip to Shamokin. They invited appellant to eat lunch with them which he refused. About 2:30 p.m. the officers, in the presence of Robert Knight, an investigator for the National Board of Fire Underwriters, then began questioning appellant, having first warned him of his constitutional rights. Appellant was interrogated intermittently between 2:30 p.m. and 4:00 p.m. At

no time during that period did he say anything which would even remotely indicate that he was guilty of the crimes charged. During the entire period he continued to request that his attorney be summoned.

The officers then took appellant to the office of a local justice of the peace and secured a commitment. At that time appellant was advised by the officers not to offer any testimony until he was represented by counsel. On the trip from the office of the justice of the peace to the Northumberland County Jail appellant said to Corporal Raymond Anderson: "How many years do you think I get for this". The officer replied: "I don't know, Jim. That is entirely up to the Court". The officer then said: "Jim, is that the way you figured you would get your $7,000 back, out of the bakery, by burning it down". To this appellant replied: "Yes". Corporal Anderson, an experienced investigator attached to the Fire Marshall's office, made an examination of the building and personal property damaged by the fire. He described the portions of the exterior and interior which had been burned. Two long time active members of the Shamokin Volunteer Fire Department also testified as to the conditions in the burned interior of the building. These witnesses established the location of at least four separate and independent fires in the building.

Appellant first contends that the trial Court erred in refusing to order that the jury be taken to view the scene of the fire, citing *Commonwealth v. Miller,* 139 Pa. 77, 21 A. 138, and *Commonwealth v. Sallade,* 374 Pa. 429, 97 A. 2d 528. An examination of the *Sallade* case reveals that appellant relies on the dissenting opinion. In the *Miller* case, the Supreme Court stated that defendant's request to have the jury view the premises was reasonable but concluded: "It was, however, a matter fairly within the discretion of

the court, and we cannot say that it was an abuse of that power to refuse the application". See also the majority opinion in the *Sallade* case, supra. In the case at bar, the testimony of the witnesses, coupled with seven photographs and a drawing introduced in evidence presented a sufficient description of the premises. There is no indication that appellant was prejudiced in any way, and we do not perceive any abuse of discretion by the Court below.

Appellant next contends that the Court "erred in allowing unqualified lay witnesses to give their opinion as to how the fire occurred". His argument is directed to the testimony of a Commonwealth witness, Edward Romanoskie, a member of the Shamokin Volunteer Fire Department. A reading of his testimony discloses that, after the fire had been extinguished, the witness, together with the fire chief, made an investigation of the building. They found four separate places where there had been fires, with no connection between them. The witness testified as to places where he found charred wood, embers, and holes burned in the structure. He was not offered as an expert and his evidence went no further than that which could have been given by any lay witness who might have entered the building at the same time. We find no merit in this contention.

Appellant's third contention is that the trial Court erred in permitting Mrs. Wolf and Miss Long to identify the appellant as the man they saw leave the bakery immediately after the explosion. Both women testified that they were awakened by the noise and went out on the front porch. While standing there they saw a man come out of the second floor of the bakery building, slide down to the ground, run around the corner and drive away. They both stated that the man was about the height and weight of appellant. Neither

woman saw the man's face, however. Subsequently, they were taken in a State Police car to a point in the vicinity of the office of the Justice of the Peace. They sat in the car across the street until appellant came out, when they identified him as the man they had seen on the night of the fire. They also identified appellant in the Court room. Appellant relies on the following language from *Commonwealth v. Sharpe*, 138 Pa. Superior Ct. 156, 10 A. 2d 120: "In submitting testimony as to identity, however, a definite responsibility is placed upon the trial Judge. 'No class of testimony is more uncertain and less to be relied upon than that as to identity, and, where great doubt is cast upon it by the witnesses themselves, there is a double reason for submitting it with great caution' ". For a more recent discussion of identification testimony, see *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820. In our opinion the evidence in question was admissible. Its weight was for the jury. In any event, the Commonwealth produced two witnesses who testified as to admissions by appellant that he was in the building when the explosion occurred, and left by the second floor door, just as described by the two women. Furthermore, the version of the fire given by appellant in his defense at the trial definitely identified him as the man who left the bakery immediately after the explosion. Appellant's contention that admission of the testimony of Mrs. Wolf and Miss Long was prejudical to him has no merit.

Appellant next contends that his "constitutional rights were violated". He does not point to any specific constitutional provision in connection with this contention. Appellant was admitted to the hospital in the early morning of August, 25, 1951. Later that day he consulted an attorney. The warrant was served on September 8, 1951, about 12:30 p.m. At that time

appellant had with him a paper on which was written the name of his attorney and a telephone number. As previously mentioned, appellant promptly advised the officers that he was represented by an attorney and asked that the attorney be called. He also gave them the paper containing the attorney's name and telephone number. One of the officers testified that he told a nurse to get in touch with the attorney in question, and advise him that appellant was being taken to the State Police barracks at Shamokin. The officers and appellant arrived at the barracks about 1:30 p.m. On the way there appellant again asked that his attorney be called. After arriving at Shamokin the officers went to lunch, returning about 2:30 p.m. Then, together with Robert Knight, an investigator for the National Board of Fire Underwriters, they questioned appellant about the fire. After questioning appellant for about an hour and a half, the officers took him before a Justice of the Peace to secure a commitment. It is significant that, during all this time, appellant made no statements which in any way were incriminating, and nothing which he said during the interrogation was used against him at the trial. Furthermore, the story which he told the officers during the interrogation was substantially the same story which he told at the trial. The interrogation was not taken down by a stenographer and no statement was prepared. Appellant does not contend that he was subjected to any trick, force, threats, coercion or other intimidation. His argument is directed entirely to the proposition that his attorney was not present during the period of approximately one and a half hours during which he was interrogated prior to being committed. Appellant has cited a number of cases, among them *McNabb v. United States of America* 318 U.S. 332, 63 S. Ct. 608; *Turner v. Commonwealth of Pennsylvania,* 338 U.S. 62,

67 S. Ct. 1352; and *Watts v. State of Indiana,* 338 U.S. 49, 69 S. Ct. 1347. An examination of these cases reveals that they all involve confessions obtained after an extended period of questioning. In the instant case, as already noted, there was no confession, appellant having told the officers the story he subsequently repeated on the witness stand. Moreover, the period of interrogation was comparatively brief. Appellant also relies upon the following language of Mr. Justice (later Chief Justice) SCHAFFER in *Commonwealth v. Spardute,* 278 Pa. 37, 122 A. 161: "If he had made a request for counsel and had been denied the right to send for a lawyer, this would have been a grave infraction of his rights, particularly in view of the fact that he was held by the State Police for two days. . ." [1] In the case at bar, appellant requested counsel, and an attempt was made to notify his attorney. The examination, carried on in the absence of his attorney, failed to produce anything of an incriminating nature. We are not convinced that there was such an invasion of appellant's constitutional rights as would vitiate his trial and subsequent conviction.[2] The only evidence in the nature of a confession or admission of guilt by the appellant was the testimony of Corporal Anderson as to the conversation which

---

[1] Appellant also quotes similar language from *Commonwealth v. Johnson,* 365 Pa. 303, 74 A. 2d 144. In both the *Spardute* and *Johnson* cases, a conviction was sustained. The latter case was reversed in a one paragraph order by the Supreme Court of the United States in *Johnson v. Commonwealth of Pennsylvania,* 340 U. S. 881, 71 S. Ct. 191.

[2] In the long line of Supreme Court cases reversing convictions in State Courts because they were based on confessions obtained in circumstances violative of due process, the absence of counsel at the time of interrogation is not even mentioned as a determinative factor in the decisions. See *Commonwealth v. Bryant,* 367 Pa. 135, 79 A. 2d 193, and cases cited therein.

occurred during the trip from the office of the committing magistrate to the county jail. This conversation was volunteered by appellant and took place at a time when his attorney would not have been present in any event. The weight of this evidence was clearly for the jury. See *Commonwealth v. Donough*, 377 Pa. 46, 103 A. 2d 694.

Appellant's fifth contention is that the trial Court erred in refusing to allow him to introduce into the record well known standard encyclopedias and authentic scientific circulars. At the close of his case, appellant offered for the record, to be sent out with the jury, a circular of the United States Department of Agriculture, "General Chemistry" by John A. Timm, "The World Book Encyclopedia", "Compton's Encyclopedia" and the "Encyclopedia Americana". In each instance he offered the portion treating dust explosions. The offer was made after appellant had introduced the evidence of an expert witness, an employe of the Atlas Powder Company, who testified at length on the subject. This witness conducted an experiment in the Court room showing the explosive quality of flour dust. Appellant cites *Horen v. Davis, Director General*, 274 Pa. 244, 118 A. 22; *Griffith v. Atlantic Refining Co.*, 305 Pa. 386, 157 A. 791; and *Siemens Estate*, 346 Pa. 610, 31 A. 2d 280, all cases having to do with "judicial notice". Appellant did not ask the Court to take "judicial notice" of scientific facts. What he was apparently attempting was to introduce expert opinion evidence in a manner contrary to all recognized rules of procedure. The admission of the treatises in question was in any event cumulative and subject to the discretion of the trial Judge. See *Fasick v. Byerly*, 331 Pa. 85, 200 A. 1; *Adamczuk v. Holloway*, 338 Pa. 263, 13 A. 2d 2. We approve the following language of Judge Fortney: "To permit the jury to

read a scientific discourse on dust and dust explosion in general would not . . . add anything to what they had seen, and, if anything, would serve to confuse them".

Appellant next contends that the trial Court erred in allowing the Commonwealth to withdraw Corporal Anderson, who was the prosecutor, from the stand before he had completed his testimony in chief, and to subsequently recall him for the purpose of further testimony. During his first appearance the officer gave evidence concerning his investigation of the building, evidence which was designed to show a felonious burning. The following then took place: Mr. Bonno: "If it suits counsel we will turn this witness over for cross-examination as to the investigation of the building, before we go further". Mr. Pipa: "We would prefer that you finish your examination in chief of this witness". Mr. Bonno: "Very well. We will withdraw the witness for the time being, with leave to call him back". Mr. Pipa: "We object to that. He is now under examination in chief, and he should finish with him". The objection was overruled and the witness was withdrawn. He was subsequently re-called, at which time he gave evidence tending to connect appellant with the crime. After the further examination in chief was completed, appellant cross-examined the officer on all his testimony. We fail to see error in this procedure. The order and time of introducing evidence is largely within the discretion of the trial Judge: *Commonwealth v. Gormley,* 78 Pa. Superior Ct. 294. And see *Commonwealth v. Syren,* 150 Pa. Superior Ct. 32, 27 A. 2d 504; *Commonwealth v. Ricci,* 177 Pa. Superior Ct. 556, 112 A. 2d 656. The procedure followed in the case at bar was designed to introduce the evidence in a chronological order. The appellant was not deprived of or limited in his right of cross-examination.

Appellant's seventh contention is that "to commit a defendant to jail for trial, the committing magistrate must have evidence before him to do so". The gist of this argument appears to be that there was not sufficient evidence offered at the preliminary hearing to support the action of the Justice of the Peace in holding the appellant for the grand jury. The record indicates that appellant appeared before the Justice of the Peace on September 11, 1951, at which time he was represented by two attorneys. He pleaded not guilty and waived hearing, after which he was admitted to bail. Howbeit, it is too late at this stage of the proceedings to question the sufficiency or regularity of proceedings prior to indictment. See *Commonwealth v. Murawski,* 101 Pa. Superior Ct. 430; *Commonwealth v. Evans,* 150 Pa. Superior Ct. 477, 28 A. 2d 731.

Finally, appellant contends that the Court below erred in entering judgment and imposing sentence. This contention is designed to raise the question of the sufficiency of the evidence at the trial. Appellant cites numerous cases wherein evidence was held to be insufficient to warrant a conviction. We have carefully reviewed the voluminous record in the case at bar, and have reached the conclusion that the verdict of the jury was proper. It was necessary for the Commonwealth to show that the fire was of incendiary origin, and that appellant was criminally responsible. If, as required after a verdict of guilty, we accept as true all of the Commonwealth's evidence upon which the jury could have properly based its verdict, we have no difficulty in finding that the requisite elements of the crimes here charged were proved beyond a reasonable doubt. See *Commonwealth v. Lowry,* 374 Pa. 594, 98 A. 2d 733.

The judgment is affirmed, and it is ordered that appellant appear in the Court below at such time as he may be there called, and that he be by that Court committed until he has complied with his sentence, or any part of it which had not been performed at the time this appeal was made a supersedeas.