J-S04034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERON DUPREE LEWIS | : | |
| | : | |
| Appellant | : | No. 2308 EDA 2016 |

Appeal from the Judgment of Sentence January 11, 2013
In the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0003255-2011

BEFORE: SHOGAN, OTT and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JANUARY 24, 2017**

Appellant Teron Dupree Lewis appeals *nunc pro tunc* the judgment of sentence entered in the Court of Common Pleas of Chester County on January 11, 2013, following his jury convictions of criminal attempt to commit first-degree murder, aggravated assault, aggravated assault-causing bodily injury with a deadly weapon, criminal conspiracy to commit first-degree murder, and criminal conspiracy to commit aggravated assault.[1] We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 2702(a)(4), and 903(c), respectively.

After noting "the background of this case is a protracted procedural quagmire[,]" a prior panel of this Court briefly set forth the relevant facts herein as follows:

> On May 22, 2006, Appellant and co-conspirator Omega Peoples approached the victim, Odell Cannon from two different directions as Mr. Cannon exited a house in Coatesville, Pennsylvania. A gunfight ensued, during which Appellant shot Mr. Cannon six times. Mr. Cannon was wearing body armor and he carried a revolver. He fired six shots at Mr. Peoples and Appellant, striking Peoples three times. Appellant fled from the scene and was later arrested. Mr. Peoples was found within minutes of the shooting, hiding under a nearby minivan.

**Commonwealth v. Lewis**, No. 849 EDA 2013, unpublished memorandum at 1-2 (Pa.Super. filed Dec. 18, 2014).

Ultimately, this Court held that in light of Appellant's failure to file a timely statement or supplemental statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), he waived all of the issues he had raised on direct appeal, and we consequently declined to address the merits of those claims. *Id*. at 8. Thereafter on November 24, 2015, Appellant filed *pro se* a timely petition pursuant to the Post Conviction Relief Act ("PCRA").[2] Counsel was appointed and filed an amended PCRA petition on April 19, 2016, wherein he alleged the ineffectiveness of both trial and appellate counsel.

---

[2] 42 Pa.C.S.A. §§ 9541-9546.

On June 21, 2016, pursuant to an agreement between the Commonwealth and PCRA counsel, and in light of the allegations of appellate counsel's ineffectiveness pertaining to Appellant's direct appeal that had been set forth in his counseled amended PCRA petition, the PCRA court entered an order permitting Appellant to file a direct appeal *nunc pro tunc* within thirty days. Appellant filed the same on July 19, 2016. Also on that date, the PCRA court directed Appellant to file a concise statement of matters complained of on appeal. Appellant complied on August 8, 2016, at which time he raised the two issues he presents in his Statement of the Issues portion of his appellate brief as follows:

> I.    Whether the trial court abused its discretion in denying Appellant's motion *in limine* to exclude Rahlik Gore's testimony at trial that Odell Cannon had asked Rahlik Gore to shoot the Appellant because the prejudicial impact of said testimony outweighed its probative value.
>
> II.    Whether the trial court erred in allowing Rahlik Gore to testify about and define the term "young boys" to the jury because the prejudicial impact of said testimony outweighed its probative value.

Brief for Appellant at 5 (unnecessary capitalization omitted).

In considering Appellant's challenge to the trial court's denial of his motion *in limine*,[3] we employ a well-settled standard of review:

---

[3] On October 15, 2012, trial counsel indicated on the record he had a written motion which he presented to the trial court and the Commonwealth. N.T., 10/15/12, at 4. Argument thereon ensued at which time the Commonwealth summarized the motion as one "based on a balancing test under 403."
*(Footnote Continued Next Page)*

When reviewing the denial of a motion in limine, this Court applies an evidentiary abuse of discretion standard of review.... It is well-established that the admissibility of evidence is within the discretion of the trial court, and such rulings will not form the basis for appellate relief absent an abuse of discretion." **Rivera**, 983 A.2d at 1228 (citation and quotation marks omitted). Thus, the Superior Court may reverse an evidentiary ruling only upon a showing that the trial court abused that discretion. **Commonwealth v. Laird**, 605 Pa. 137, 988 A.2d 618, 636 (Pa. 2010). A determination that a trial court abused its discretion in making an evidentiary ruling "may not be made 'merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.'" **Id**. (quoting **Commonwealth v. Sherwood**, 603 Pa. 92, 982 A.2d 483, 495 (Pa. 2009)). Further, discretion is abused when the law is either overridden or misapplied. **Commonwealth v. Randolph**, 582 Pa. 576, 873 A.2d 1277, 1281 (Pa. 2005).

**Commonwealth v. Hoover**, 630 Pa. 599, 610, 107 A.3d 723, 729 (Pa. 2014).

Appellant maintains Gore's testimony that Cannon had asked Gore to shoot Appellant had "little to no relevance or probative value in determining

*(Footnote Continued)* ───────────

However, Appellant's referenced written motion does not appear in the certified record. Appellant had the responsibility to ensure that the record forwarded to this Court contained those documents necessary to allow a complete and judicious assessment of the issues raised on appeal. **Commonwealth v. Walker**, 878 A.2d 887, 888 (Pa.Super. 2005). Notwithstanding, the trial court and the Commonwealth acknowledge Appellant's pretrial motion challenged the probative value of a portion of Commonwealth witness Rahlik Gore's testimony, and the argument Appellant presented on October 15, 2012, mirrors that which he sets forth in his appellate brief. Trial Court Opinion, filed 5/9/13, at 9; Commonwealth's Brief at 10-11. As a result, Appellant's failure to ensure the referenced written motion was included in the certified record does not hamper our review of this issue, and we decline to find it waived.

Appellant's motive or guilt." Brief for Appellant at 11. Appellant reasons that because the Commonwealth presented no evidence he actually was aware Cannon had asked Gore to shoot him and given the fact that Cannon made the statement approximately only an hour before Cannon was shot, the exchange had no effect on Appellant's state of mind. *Id*. At the same time, Appellant avers Gore's testimony was unfairly prejudicial to him as it could have persuaded jurors Appellant had shot Cannon in retaliation for the threat on Appellant's life. *Id*.

In support of its decision to reject Appellant's position that the prejudicial effect of Gore's testimony under Pa.R.E. 403 exceeded its probative value, the trial court reasoned as follows:

> [T]he Commonwealth's theory of the case was that Cannon's shooting was a retaliatory action in a continuing dispute between two factions in the Coatesville underworld, immediately precipitated by an attempt on People's life two days earlier. Gore was intimately familiar with the principals engaged in the dispute and their underlings, and was a witness to the immediate events leading up to Cannon's shooting. We denied Appellant's motion in limine because Gore's testimony in this respect was consistent with the Commonwealth's theory of the case and its other evidence, from which the jury could properly conclude the attempt on Cannon's life was prompted by the dispute and the prior attempt on People's life by Cannon's protégé. The Commonwealth's other evidence, if believed, by the jury, showed that Appellant was a close associate of Peoples, who[m] Cannon had a motive to shoot. From the inception of the Commonwealth's opening to the jury, the Commonwealth's theory of the case was that retaliation was the motivating factor. Commonwealth's evidence also showed that T.J. Gardner, who fired on Peoples, was Cannon's associate, thus providing another motive for Appellant and Peoples to seek retribution on Cannon.
>     All evidence introduced at trial against a defendant is prejudicial as respects its potential for convicting him. See

> *Commonwealth v. Rigler*, 412 A.2d 846, 852 (Pa. 1980). However, Rule 403 proscribes only evidence that is unfairly prejudicial. The latter term is described in the Rule's comment to mean evidence that has a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty to weigh the evidence impartially. Rule 403 is distinguishable from Pa.R.E. 404(b)(3), which is not implicated by the evidence of which Appellant now complains. Appellant's burden on appeal is to demonstrate that the trial court abused its discretion in determining that the danger of unfair prejudice caused by Gore's testimony did not outweigh its probative value. *Commonwealth v. Galloway*, 771 A.2d 65 (Pa.Super., 2001). Pa.R.E. 403. In the context of the Commonwealth's theory of the case and the other evidence of Appellant's guilt of which no complaint is now made, Gore's testimony was not unfairly prejudicial. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. *Commonwealth v. Spiewak*, 617 A.2d 696, 699 (Pa., 1992). Once evidence is found to be relevant and probative, it is inadmissible only if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. *Commonwealth v. Lilliock*, 740 A.2d 237, 244 (Pa. Super., 1999) citing *Commonwealth v. Foy*, 612 A.2d 1349 Pa., 1992). Instantly, in denying the motion, we concluded this evidence was not unfairly prejudicial to Appellant.

Trial Court Opinion, filed 5/9/13, at 9-11.

Upon our review of the trial testimony, we find the trial court did not abuse its discretion in this regard. Although Appellant posits the jury definitively "made the improper conclusion that because [] Cannon wanted Appellant shot by [] Gore, Appellant would therefore want to kill [] Cannon,

and did in fact shoot [] Cannon an hour later[,]"[4]  Brief for Appellant at 8, Appellant's argument the Commonwealth failed to prove Appellant actually had been aware of Cannon's statement belies this claim.  Indeed, Gore stressed that it was after Appellant had left the house and Gore and Cannon were alone that Cannon revealed his desire to have Appellant shot.  N.T., 10/17/12, at 430-31.  Therefore, contrary to Appellant's argument Gore's testimony was unfairly prejudicial to him, such testimony was relevant to advance the Commonwealth's theory of the case, developed through other testimony at trial, that the shooting was motivated by the ongoing animosity between the opposing street gangs to which Cannon and Appellant belonged.   Therefore, Appellant's claim the prejudicial impact of this testimony outweighed its probative value lacks merit.

Appellant next asserts the trial court erred in allowing Gore to discuss and define the term "young boys" at trial as the prejudicial impact of the testimony outweighed its probative value. Appellant reasons that "by referring to Appellant as [] Peoples' "young boy" or "little homie[,]" the jury could have erroneously inferred that Appellant and [] Peoples had conspired to kill [] Cannon."  Appellant further avers such evidence prejudiced him "as

_____

[4] Gore actually testified only one-half hour had elapsed between the time at which Appellant left the house and when Gore heard gunshots.  N.T., 10/17/12, at 493, 496.

- 7 -

it could have lead the jurors to believe that there was bad blood between [ ] Appellant and [] Cannon." Brief for Appellant at 13.

During the Commonwealth's case-in-chief, Gore testified on direct examination without objection as follows:

> Commonwealth: Now, Ronnette we've talked about, and [Appellant], what was [Appellant's] association, if any, with [] Peoples?
>
> Gore: I think that was his little homie. They was friends. Something like that. Like I said, I don't know the details about that.
>
> Commonwealth: Well, your understanding of little homie, what's that, young boy?
>
> Gore: Yeah, yes, something like that. Yeah, same thing.

N.T., 10/17/12, at 416. Previously, Gore had identified Terry (TJ) Gardener, the individual who had attempted to kill Peoples, as Cannon's "young boy," and, again, no objection followed. N.T., 10/17/12, at 398.

Later, when the Commonwealth indicated it had no further questions for Gore, the trial court questioned the prosecutor as follows:

> The Court: Mr. Yen, several times during the course of the trial the term young boy has been used, including by Mr. Gore in your question to him. Might we know what that means?
>
> Commonwealth: Mr. Gore, can you answer that?
>
> Defense Counsel: Actually, I'd object Your Honor, if we can see Your Honor at sidebar.

*Id*. at 450. The following discussion ensued:

> Defense Counsel: Your Honor, the question I'm objecting to because I have looked the word up and there's no definition of it

- 8 -

in the Webster dictionary, I found it in the Urban Dictionary describing various things like someone who's friends from youth, things of that nature, so it's just going to be his opinion as to what it means. I think it means different things to different people and I think the danger is that if Mr. Yen establishes that TJ Gardner [sic] was the young boy of Odell Cannon and if he's the young boy of Omega Peoples—

The Court: That's the context in which the term has been used to the jury and the jury is left to wonder what that means.

Defense Counsel: Well, I think they can draw their own conclusions. It's not like—it's not like this is the service and a young boy is junior to like a sergeant as a lieutenant and I think it is very prejudicial and then I think the jury can just conclude whatever it wants to conclude from that. I considered filing a pretrial motion to bar this, but I know that the term has been used in this case, **but I don't know what he's going to say and that's my concern**.

The Court: Mr. Yen, would you like to address this?

Commonwealth: I don't see the problem.

The Court: Neither do I. The objection's overruled.

*Id*. at 450-51 (emphasis added). The Commonwealth's questioning of

Gore continued:

Commonwealth: Okay. Mr. Gore, [Gardner] being [Cannon's] young boy, what does that mean?

Gore: Young boy is sort of like someone you take under your wing.

Commonwealth: Okay.

Gore: Like a – like somebody you're grooming. Could be a flunky sometimes.

Commonwealth: Okay. And so if we talk about [Appellant] being [ ] Peoples' young boy, it's the same thing?

Gore: Right.

*Id*. at 451-52. Although defense counsel previously had objected due to his uncertainty as to what Gore was going to say, no objection followed Gore's actual testimony.

Appellant also did not object later to the prosecutor's use of the term "young boy" at numerous times during closing argument. **See** N.T., 10/18/12, at 591, 594, 606. However, he did object to the prosecutor's saying that "[Appellant]" is Peoples' young boy" on the ground that he did not recall Gore testifying that Appellant was People's young boy. *Id*. at 608-09. Furthermore, Appellant did not ask the trial court to instruct the jury as to any alternative definition of the term.

It is well-established that:

> [a] party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." **Commonwealth v. Cousar**, 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied,* 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. **Commonwealth v. Arroyo**, 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); **Commonwealth v. Stoltzfus**, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); **Commonwealth v. Duffy**, 832 A.2d 1132, 1136 (Pa.Super.2003), *appeal denied,* 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and **specific** objection to preserve issue for appellate review).

**Commonwealth. v. Bedford**, 50 A.3d 707, 713–14 (Pa.Super. 2012) (*en banc*) (emphasis in original).

- 10 -

While Appellant states in his appellate brief that the trial court erred in permitting this testimony "over Appellant's objections," Brief for Appellant at 15, as the Commonwealth pointed out, Appellant did not lodge a timely specific objection on the record challenging Gore's use of the term "young boy" on direct examination, nor did he later argue at sidebar, as he does herein, that Gore's testimony pertaining to his understanding of "young boy" would create an erroneous inference of Appellant's involvement in a conspiracy to kill Cannon. **See** Commonwealth's Brief at 14; N.T., 10/17/12, at 452. Instead, Appellant's counsel objected in light of his concern that he did not know what Gore was going to say. Therefore, we cannot reach the merits of this issue because it is waived. **See** Pa.R.E. 614 Cmt.; **see also Commonwealth v. Tucker**, 143 A.3d 955, 961 (Pa.Super. 2016) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[5]

_____

[5] We note that even if Appellant properly had preserved this issue for our review, we would not afford relief thereon. In the single page of text he devotes to the issue in his appellate brief, Appellant frames his argument in terms of what the jury's reaction to the testimony "could have been," and nowhere establishes he was actually prejudiced by it. To the contrary, in light of Appellate counsel's admission he was unable to present a standard dictionary definition of "young boy," and that its meaning to various individuals differs, Gore's clarifying of his understanding of the term as essentially one's protégé aided the jury's understanding of his statements.
*(Footnote Continued Next Page)*

- 11 -

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2017

---

*(Footnote Continued)*

His definition was not unfairly prejudicial to Appellant, nor was it unduly suggestive of Appellant's guilt.